{¶ 19} Defendant Greene proffered a plea of guilty to a violation of R.C. 2921.331(B), failure to comply with the lawful order or direction of a police officer. His violation of R.C.2921.331(B) is classified as a fourth degree felony. R.C.2921.331(C)(4). In accepting Greene's plea the trial court was therefore governed by the requirements of Crim.R. 11(C)(2), which sets out the requirements the court must satisfy before it accepts a plea of guilty or no contest to a felony offense.
 {¶ 20} Crim.R. 11(C)(2)(a) requires the court to determine that the defendant understands the nature of the charges to which the plea is entered and the maximum penalty involved. The nature of the charge refers to the particular basis for the criminal liability that may result. The maximum penalty generally refers to criminal penalties, that is, to incarceration and/or fines that may be imposed. Collateral consequences involving potential or mandatory civil disabilities, such as the loss of the right to vote, or loss of a business license or operator's privileges, are not among the penalties to which Crim.R. 11(C)(2)(a) has been held to refer.
 {¶ 21} Crim.R. 11(C)(2)(b) requires the court to determine that the defendant understands the "effect" of his plea and that, if it is accepted, the court may proceed to judgment. The effect of a guilty plea is defined by Crim.R. 11(B)(1), which states: "The plea of guilty is a complete admission of the defendant's guilt." Obviously, that does not implicate a suspension of driving privileges.
 {¶ 22} Two other appellate districts have held that failure to determine that a defendant understands that his plea of guilty or no contest will subject him to a mandatory driver's license suspension violates Crim.R. 11(C)(2) and/or Crim.R. 11(D), which applies to serious misdemeanor offenses. Metropolitan ParkDistrict v. Pauch (Dec. 16, 1999), Cuyahoga App. No. 74792;State v. Stamper (June 12, 1997), Mahoning App. No. 95CA73. We did likewise in State v. Calderon (Nov. 29, 1995), Montgomery App. No. 15250, though in the context of a subsequent Crim.R. 32.1 motion to vacate the plea. Though we found no "manifest injustice" in Calderon, the majority's opinion and the opinions in Pauch and Stamper viewed the mandatory suspension as a form of penalty for purposes of Crim.R. 11.
 {¶ 23} I agree that a mandatory suspension of driving privileges is a serious adverse consequence of a guilty plea, and that good practice supports the court's determination that the defendant understands his plea will subject him to it. In Pauch
and Stamper the suspensions imposed were for one year and six months, respectively. In the present case, Defendant Greene faced a mandatory suspension of from three years to life, and the court imposed it for his lifetime. That is a penalty so draconian that some prior explanation is surely warranted. Nevertheless, for the reasons stated above, finding that the failure violates Crim.R. 11(C)(2) is problematic.
 {¶ 24} A different basis for reversal is presented, however. The plea agreement form that Greene signed indicated that he would be subject to a license suspension ranging from six months to five years, a suspension that was a consequence of a drug-related offense with which Greene was not charged. When material misinformation about a consequence of a guilty plea is conveyed to a Defendant, and the court by its silence fails to correct the mistake, the failure renders the plea less than knowing, intelligent, and voluntary. State v. Engle (1996),74 Ohio St.3d 525. In that circumstance, the plea must be vacated.Id. As I wrote in my dissenting opinion in Calderon, which likewise involved misadvice, I would reverse Greene's plea and conviction and remand for further proceedings on the authority ofEngle.